IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


EDWARD MARKERT,                      :
                                     :
            Plaintiff,               :    CIVIL ACTION
                                     :
      v.                             :    NO. 09-CV-5774
                                     :
BECKER TECHNICAL STAFFING,           :
INC., et al.,                        :
                                     :
            Defendants.              :


## MEMORANDUM AND ORDER

**Joyner, J.**                                    **May 5, 2010**

     This case is now before the Court on Defendants Joan and
Harvey Becker's Motion to Dismiss Plaintiff's Amended Complaint
(Doc. No. 17).  For the reasons set forth below, the Motion is
GRANTED.

## Factual Background[1]

     Plaintiff was employed by Defendant Becker Staffing
Services, LLC ("Becker Staffing") as a Senior Account Executive
and Senior Executive Recruiter for the IT Division from August
2007 until August 2009.  In addition to Becker Staffing,
Plaintiff has named five other Defendants:  Daniel Becker, who is
the President of Becker Staffing; Renee Becker, who is Daniel

_____

     [1]In line with a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss, all factual
allegations are viewed in the light most favorable to the non-moving party.
<u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008) (citations
omitted).

Becker's wife, and the President of Defendant Becker Technical Staffing, Inc. ("Becker Technical"), a corporation that is a separate legal entity from, but affiliated and shares office space with, Becker Staffing; Harvey Becker, who is Daniel Becker's father, and ran the predecessor companies to Becker Staffing; and, finally, Joan Becker, who is Harvey Becker's wife.

Plaintiff asserts that during his time at Becker Staffing, he became one of the company's top producers, provided management-level expertise in training other employees, allowed his personal information and information stored on his personal hard drive to be used by other Becker Staffing employees, and was otherwise a good employee. Notwithstanding these facts, Plaintiff asserts that in or around February 2008, his base salary was cut from approximately $70,000 per year to approximately $40,000 per year. Plaintiff began to look for other work in March of 2009, but asserts that he continued to put forth his best efforts while working for Becker Staffing.

On August 3, 2009, Plaintiff was working from home and remotely accessed his work computer through his personal laptop. At some point during this time, he logged into his personal Gmail account and did not log out, causing his personal e-mail inbox to appear on the screen of his work computer. Included in this inbox was an e-mail that discussed what Defendants believed was an attempt to divert business away from Becker Staffing. When

Daniel Becker saw this e-mail, he allegedly proceeded to search through the rest of Plaintiff's personal e-mails. When Plaintiff arrived at the office for his next day of work he discovered that his printer was missing, his computer was disconnected, and his chair had been removed. When he inquired about the missing items he was informed that he was fired from his position. Plaintiff asserts that, although he requested that his portable hard drive and any other personal information in the office be returned to him, he never received this property back from Defendants.

Plaintiff alleges that he subsequently discovered that Defendants have utilized the personal information that was contained on his portable hard drive and have reviewed e-mails within his Gmail account, which was not used for work purposes. He further asserts that Defendants co-mingled assets and funds during his employment, which resulted in Plaintiff not receiving all of the money to which he was entitled from Becker Staffing's profit-sharing plan. In addition, Plaintiff asserts that Defendants manipulated the net profit from which his commissions were determined, thereby decreasing his payments. Finally, Plaintiff asserts that after his separation from Becker Staffing, Defendants defamed and slandered him by attacking his business ethics.

Plaintiff has brought claims against all individual Defendants for defamation and slander, violation of the Federal

Stored Communications Act ("FSCA"), invasion of privacy, and conversion, and claims against all Defendants for violation of the Pennsylvania Wage Payment and Collection Law ("PWPCL") and the Employee Retirement Income Security Act ("ERISA"). Defendants Harvey and Joan Becker have filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), asserting that Plaintiff has failed to state a claim against them on which relief can be granted.

## **Standard**

Federal Rule of Civil Procedure 12(b)(6) requires a court to dismiss a complaint if the plaintiff has failed to "state a claim on which relief can be granted." In evaluating a motion to dismiss, the court must take all well-pleaded factual allegations as true, but it is not required to blindly accept "a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 283, 286 (1986). Although a plaintiff is not required to plead detailed factual allegations, the complaint must include enough facts to "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In order to do so the plaintiff must show that his right to relief is at least "plausible." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); Twombly, 550 U.S. at 570. This requires more than a "formulaic recitation of the elements of a cause of action," Twombly, 550 U.S. at 555, and the complaint

4

must allege facts "suggestive of" the elements of the cause of action in order to survive a motion to dismiss.  <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 232-33 (3d Cir. 2008).

## Discussion

### Jurisdiction

As an initial matter, we must first ensure that this Court has jurisdiction over all of Plaintiff's claims.  Plaintiff brings his case under this Court's federal question jurisdiction, as provided by 28 U.S.C. § 1331.  Out of Plaintiff's seven counts, two raise a federal claim:  Count III's allegations of an ERISA violation and Count IV's claim under the FSCA.  When jurisdiction is proper under § 1331, supplemental jurisdiction can be exercised over state law claims under 28 U.S.C. § 1367(a) if the claims form part of the same "case or controversy under Article III of the Constitution."  Cases have subsequently interpreted this phrase to require that the claims over which the court exercises supplemental jurisdiction have a "common nucleus of operative facts" and be of the type that would ordinarily be expected to be tried in the same proceeding as the federal claim.  <u>Lyon v. Whisman</u>, 45 F.3d 758, 760 (3d Cir. 1995) (citing <u>United Mineworkers of Am. v. Gibbs</u>, 383 U.S. 715, 725 (1966)).

Applying this standard to Plaintiff's case, we must determine which state law claims have a common nucleus of operative facts with either Plaintiff's ERISA or FSCA claims.

The facts surrounding Plaintiff's ERISA claim, found in Count III of his Amended Complaint, deal with his allegations that Defendants diverted funds to their personal use out of a profit-sharing plan, and that he was not permitted to enroll in a 401(k) plan. Plaintiff's ERISA claim, therefore, shares a common nucleus of operative facts with Count II, which brings a claim under the PWPCL, Count VI, which brings a claim for breach of contract, and Count VII, which brings a claim for conversion. All of these state law claims focus on the diversion of funds from the profit-sharing plan, and Plaintiff's PWPCL claim also addresses other contentions relating to decreased payment resulting from miscalculations of his commissions and his inability to enroll in Becker Staffing's 401(k) plan. Overall, Counts II, III, VI, and VII all center around Plaintiff's compensation and the alleged misuse of corporate funds by Defendants. Given that these claims share a common nucleus of operative fact and that we do not believe that any of the grounds for declining jurisdiction listed in 28 U.S.C. § 1367(c) apply to the present case, we will exercise supplemental jurisdiction over Counts II, VI, and VII.

Plaintiff's second federal claim is found in Count IV of his Amended Complaint, and is brought pursuant to the FSCA to recover damages for Defendants' perusal of his personal e-mail account. Plaintiff's state law claim for invasion of privacy in Count V

arises out of a common nucleus of facts with his FSCA claim, given that both focus on Defendants' actions in accessing and reading Plaintiff's personal e-mails.  As there is, again, no reason contained in § 1367(c) for this Court to decline to exercise jurisdiction over this claim, we will exercise supplemental jurisdiction over Count V as well.

There is not, however, a common nucleus of facts between Count I of Plaintiff's Amended Complaint and either of Plaintiff's federal claims.  Count I seeks damages for defamation and slander.  These allegations revolve around actions taken by Defendants after Plaintiff was no longer employed by Becker Staffing, and have no relation to the diversion of money from a profit-sharing plan, participation in a 401(k) plan, Plaintiff's employment relationship or contract with Defendants, or the reading of Plaintiff's personal e-mails.  Instead, the facts that Plaintiff pleads in support of this Count deal with Defendants calling potential employers or clients and accusing Plaintiff of various unethical business practices.  Although the Defendants are the same, the events are temporally proximate, and Defendants might have obtained some of the information that caused them to develop these allegedly slanderous opinions by reading Plaintiff's e-mails, none of these relate to the facts that Plaintiff would be required to prove at trial on his claims for defamation and slander.  Instead, it appears that the only common

nucleus of facts that could be found between Count I and any federal claim in this case is that all of these claims are in some way related to Plaintiff's employment by Defendants. The Third Circuit, however, has explicitly stated that a "general employer-employee relationship" is not sufficient to provide the federal courts with subject matter jurisdiction over supplemental claims. Lyon, 45 F.3d at 762. Given this background, we find that we cannot exercise jurisdiction over Count I of Plaintiff's Amended Complaint, and this must be dismissed immediately as to all Defendants. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998) (requiring that the question of subject matter jurisdiction be determined "as a threshold matter").

**Count II**

Count II of Plaintiff's Amended Complaint alleges violations of the Pennsylvania Wage Payment and Collection Law. Under this law, all employers must give notice to prospective employees of their wages at the time of their hiring. 42 Pa. Cons. Stat. Ann. § 260.4 (West 2004). If any portion of this Law is violated, an employee can bring a civil action to recover unpaid wages. Id. § 260.9. An individual can be held liable under this statute only if he or she is found to be an "employer." Tyler v. O'Neill, 994 F. Supp. 603, 616 (E.D. Pa. 1998); Mohney v. McClure, 568 A.2d 682, 686 (Pa. Super. Ct. 1990). In order for the defendant to qualify as an employer, and thereby face

8

potential individual liability, the plaintiff must present
evidence that the defendant played "an active role in decision
making." Int'l Ass'n of Theatrical Stage Employees, Local Union
No. 3 v. Mid-Atlantic Promotions, Inc., 856 A.2d 102, 105 (Pa.
Super. Ct. 2004) (quoting Mohney, 568 A.2d at 686).

Plaintiff alleges that the PWPCL was violated in this case
because Plaintiff was not paid in accordance with the Salary and
Commission Package with which he was provided at the commencement
of his employment. Specifically, Plaintiff asserts that his
compensation was deficient in four distinct ways: first, he
asserts that he was not paid the full amount that he was due in
commissions because Defendants artificially inflated business
expenses to reduce the profit from which his commission was
calculated; second, Plaintiff asserts that he was not paid the
"margin/placement fees" for any permanent or direct placements;
third, Plaintiff alleges that his commissions were not properly
calculated; and fourth, Plaintiff charges Defendants with
converting profit-sharing funds to their own use, which decreased
the amount available to him.

Plaintiff, however, fails to allege any facts that make
plausible that Joan or Harvey Becker were his "employers," and
therefore has failed to state a claim for a violation of the
PWPCL by these Defendants. The only allegations against Joan and
Harvey Becker relating to this Count state that these

individuals, although not officially officers or directors of Becker Staffing, were controlling the business "behind the scenes" and that no business decisions were made without their express or implied consent.  The facts that are contained in Plaintiff's Amended Complaint, however, are contrary to these statements.  In the deposition of Daniel Becker that was attached to the Amended Complaint, he states that he is the President of Becker Staffing and that there are no other officers or shareholders of the company.  In addition, in Harvey Becker's deposition, which is also attached to the Amended Complaint, he states that he is not an officer of the company and just "help[s] out" and "work[s] on special projects."  He further states that he only works at the office a few hours per week.  Turning to Joan Becker, there are simply no facts alleged that indicate that she had any relationship at all with the company.  These facts are not consistent with either Joan or Harvey Becker having an "active role in decision making" within Becker Staffing.  In the absence of any facts that would make such a determination plausible, we cannot find that Plaintiff has stated a claim against Defendants Joan and Harvey Becker on this count, as they were not his employers within the meaning of the PWPCL.

**Count III**

Next, Plaintiff's Amended Complaint alleges that Defendants violated ERISA.  ERISA provides an extensive and intricate

10

statutory framework to ensure the protection of "welfare plans" and "pension plans" that are operated by employers for the benefit of their employees.  A welfare plan is one that is maintained by the employer to provide non-pension benefits for employees through the purchase of insurance, while a pension plan is one that is maintained by the employer either to provide retirement income or to defer a portion of the employee's income until after the employee no longer works for that employer.  29 U.S.C.A. § 1002 (West 2009).  Although there are numerous ways in which ERISA can be violated, almost all of these first require the existence of a welfare plan or a pension plan.

Plaintiff alleges that Defendants violated ERISA by withholding benefits due under the Becker Staffing profit-sharing plan and by "represent[ing], but never initiat[ing]" a 401(k) plan.  Astoundingly, Plaintiff does not state a single specific provision of ERISA that has been violated,[2] but rather asserts that the Act—which includes multiple subchapters, subtitles, parts, and subparts, and is spread across six volumes of the U.S. Code Annotated—has been violated.  Regardless of this lack of specificity, however, Plaintiff first must demonstrate that the plans at issue are governed by ERISA.  Although a 401(k) plan is an example of a "pension plan" within the meaning of ERISA,

---

[2]Plaintiff does cite 29 U.S.C. § 1132(e)(1), but this refers only to jurisdiction over civil actions generally, and is not a portion of the Act that provides Plaintiff with any independent right to bring suit.

Plaintiff states that he never enrolled in this plan. ERISA's portions governing these plans, therefore, are not relevant to Plaintiff's claim; instead, the proper cause of action relating to the 401(k) would be under the PWPCL, although, as stated above, this cause of action is not appropriate as to the moving Defendants. Further, it is not clear from the face of Plaintiff's Amended Complaint that the profit-sharing plan discussed falls under ERISA's definition of a welfare or pension plan. First, it is clear that the profit-sharing plan is not a welfare plan, as there is no purchase of insurance.[3] Second, from the facts pled concerning the profit-sharing plan, it appears that this was meant to provide compensation for Plaintiff during the course of his employment, which also prevents the plan from being a pension plan. As this is a motion to dismiss, however, and as this point is not dispositive to the instant Motion, we will assume, arguendo, that the profit-sharing plan falls under the purview of ERISA.

Even if, however, Plaintiff has pled the existence of a plan that was covered by ERISA, he has not stated any involvement by

---

[3] In Plaintiff's Response to Defendants' Motion to Dismiss, he states that at least some of the money that was diverted from the profit-sharing plan was put into a health insurance plan for Defendants Joan and Harvey Becker, and that this health insurance plan would be governed by ERISA. While this may be true, we are unsure how Defendants' participation in a welfare plan gives Plaintiff a right to sue under ERISA if he did not also participate in a plan governed by ERISA. The fact that his employer or the individual Defendants in this case may have been involved in plans that were governed by ERISA does not give Plaintiff a right to sue under ERISA simply because these plans are tangentially related to his Complaint.

12

Joan or Harvey Becker in violating the statute.  Although ERISA

does allow individual liability for a breach of fiduciary duty,

29 U.S.C.A. § 1109(a) (West 2008),[4] this requires the existence

of a fiduciary duty.  ERISA defines a "fiduciary" as any person

who exercises discretionary control or authority over the plan's

management, administration, or assets.  Id. § 1002(21)(A) (West

2009).  According to the United States Court of Appeals for the

Third Circuit, "the linchpin of fiduciary status under ERISA is

discretion."  Curcio v. John Hancock Mut. Life Ins. Co., 33 F.3d

226, 233 (3d Cir. 1994).  As noted above, there are simply no

facts stated that make it plausible that either Joan or Harvey

Becker were in a position to exercise discretion over the

finances of Becker Staffing or any profit-sharing plan run by the

company.  In the absence of some indication that this was the

case, we cannot find that Plaintiff has adequately pled that the

moving Defendants were fiduciaries, and no fiduciary duties were

owed, much less violated.  Even if, therefore, one of the plans

discussed in the Amended Complaint is covered by ERISA, no claim

has been stated for the violation of the Act by the moving

Defendants.

---

[4] As noted above, Plaintiff does not state any specific provision of
ERISA that has been violated.  Because individual Defendants have brought the
instant Motion to Dismiss, and because the breach of a fiduciary duty is the
main mechanism for individual liability provided by ERISA, we have analyzed
Plaintiff's Amended Complaint as attempting to raise a claim for breach of
fiduciary duty.

**Count IV**

In Count IV, Plaintiff charges Defendants with violating the Federal Stored Communications Act.  This statute makes it a federal offense to intentionally access, without or exceeding authorization, a facility through which an electronic communication is provided, and thereby obtain access to electronic communication "while it is in electronic storage in such system."  18 U.S.C.A. § 2701 (West 2009).  "Electronic storage" is defined to include any temporary, immediate storage that is incidental to the transmission as well as storage "for purposes of backup protection."  Id. § 2510(17); see also id. § 2711 (incorporating the definitions from § 2510 into the FSCA). Importantly, however, any access by the "person or entity providing a wire or electronic communications service" is explicitly exempted from liability.  Id. § 2701(c).

In the instant case, Plaintiff alleges that Defendants violated the statute by intentionally accessing Plaintiff's personal e-mail account without authorization and reading the e-mails that were in his inbox.  As an initial matter, Plaintiff must plead that there was "stored communication" that was accessed in order to state a claim for a violation of § 2701. Defendants urge that it is not a violation of the Act to retrieve the e-mails from storage after transmission is complete, and cite Fraser v. Nationwide Mutual Insurance Co., 135 F. Supp. 2d 623,

14

636 (E.D. Pa. 2001), in support of this assertion.  This decision
was appealed, however, and the Third Circuit "assumed without
deciding" that the district court's analysis of this portion of
the statute was incorrect, and that the retrieval of an e-mail
from storage, even after the transmission was complete, was
enough to qualify the act for protection under the FSCA.  <u>Fraser
v. Nationwide Mut. Ins. Co.</u>, 352 F. 3d 107, 114 (3d Cir. 2003).
After examining the statute, we do not believe that it is proper
to require that the communication be in the process of
transmission in order for it to be covered under the FSCA.
Although the Third Circuit has not yet directly held that this is
the proper interpretation of the Act, given its nod in that
direction and this Court's own plain-language reading of the
statute, we find that the FSCA applies when information is
retrieved from electronic storage even after transmission is
complete.  The information that was accessed by Defendants,
therefore, does qualify for protection under the FSCA.

Next, we must determine whether Defendants accessed the
electronic information either without authorization or in excess
of their authorization.  The moving Defendants do not appear to
contest that any access of Plaintiff's personal e-mail messages
was without authorization.  This, however, is not important as to
the moving Defendants because there is no allegation that either
of these individuals were involved in the improper accessing of

the stored communications.  First, Plaintiff appears to withdraw his claim as to Joan Becker in his Response to Defendants' Motion to Dismiss.  Second, there are no assertions in Plaintiff's Amended Complaint that Harvey Becker accessed Plaintiff's personal e-mail account.  Instead, Plaintiff's Amended Complaint states "Defendant Daniel admitted . . . that he personally went through the emails contained in the g-mail account of Plaintiff." (Am. Civil Action Compl. ¶ 49.)  Although Plaintiff charges Harvey Becker with having read some of these e-mails, his Amended Complaint, as well as the deposition testimony attached to that Amended Complaint, explicitly states that Daniel Becker was the individual who accessed these e-mails without authorization. Harvey Becker is simply alleged to have read these e-mails after Daniel Becker accessed and printed them.  The FSCA is not violated simply by reading e-mails that were electronically stored at one point.  Instead, the Act attaches liability to the accessing of the stored communication.  It is, therefore, insufficient to state a claim against Harvey Becker to allege that he read some of Plaintiff's personal e-mails unless it is also alleged that Harvey intentionally accessed these e-mails without authorization.  In the absence of such an allegation, Plaintiff has not stated a claim on which relief can be granted against either of the moving Defendants.

**Count V**

Count V charges Defendants with invasion of privacy. Under Pennsylvania law, invasion of privacy can take one of four forms: "(1) publicity given to private life; (2) intrusion upon seclusion; (3) appropriation of name or likeness; and (4) publicity placing a person in a false light." Tucker v. Merck & Co., 102 F. App'x 247, 256 (3d Cir. 2004) (citing Vogel v. W.T. Grant Co., 327 A.2d 133, 136 (Pa. 1974)). Although Plaintiff's Amended Complaint does not explicitly state under which theory his claim is brought, his Response to Defendants' Motion to Dismiss characterizes this claim as one for intrusion upon seclusion, and we will treat his Amended Complaint as raising this claim. In order to state a claim for invasion of seclusion, it is necessary to demonstrate that a "private place" or a "private seclusion" that surrounds the plaintiff's affairs has been invaded by the defendant. Harris ex rel. Harris v. Easton Publ'g Co., 483 A.2d 1377, 1383 (Pa. Super. Ct. 1984). Further, any intrusion into this seclusion must be "substantial" and "highly offensive to the ordinary reasonable person." Id. at 1383-84.

Turning to the facts pled in support of this Count of Plaintiff's Amended Complaint, they are substantially similar to those contained in Count IV, and again center around the reading of Plaintiff's personal e-mails. As with Count IV, Plaintiff

concedes in his Response to Defendants' Motion to Dismiss that he
has not stated a claim against Joan Becker, and, therefore, we
will dismiss this Count as to her.  Again, however, Plaintiff
also fails to state a claim against Harvey Becker.  An invasion
of privacy, and specifically an intrusion upon seclusion,
requires that the defendant intrude upon the plaintiff's
seclusion.  In the present case, Plaintiff's Amended Complaint,
taken in combination with the attached deposition testimony,
alleges that Harvey Becker read at least one of Plaintiff's
personal e-mails.  It does not, however, allege that Harvey
Becker was involved in the obtaining of these e-mails or was
involved in the act of intrusion.  Instead, Harvey Becker is only
alleged to have read the e-mails once someone else had intruded
upon Plaintiff's seclusion.  Once the e-mails were obtained from
Plaintiff's personal e-mail, the intrusion upon seclusion was
complete; the e-mails simply were no longer surrounded by the
private seclusion that Plaintiff had placed around them.
Plaintiff does not automatically have a cause of action against
those who subsequently viewed the previously private information.
Instead, any cause of action that Plaintiff has for invasion of
privacy would be against the person who invaded the privacy and
subsequently disseminated the information.  As Plaintiff has not
pled facts that make it plausible that Harvey Becker was involved
in the intrusion itself into his seclusion, Count V must also be

dismissed as to this Defendant.

**Count VI**

Plaintiff also brings a claim for breach of contract against Defendants. To establish breach of contract under Pennsylvania law, the plaintiff must demonstrate the existence of a contract, a breach of that contract, and damages resulting from the alleged breach. Galko v. Harleysville Pennland Ins. Co., 71 Pa. D. & C.4th 236, 253 (Pa. C.P. Lackawanna County 2005). An enforceable contract requires a mutual agreement between the parties, the exchange of consideration, and that the agreement's terms are delineated with a sufficient degree of clarity. Weavertown Transp. Leasing, Inc. v. Moran, 834 A.2d 1169, 1172 (Pa. Super. Ct. 2003). Further, "[t]he burden is on the plaintiff to prove by a preponderance of the evidence the existence of the contract to which the defendant is a party." Viso v. Werner Contracting Co., 369 A.2d 1185, 1187 (Pa. 1977).

Plaintiff's breach of contract claim is based upon his employment contract with Becker Staffing. Neither of the moving Defendants, however, are parties to this contract. The contract, which is attached to Plaintiff's Amended Complaint, is not signed by either of these Defendants, but, instead, is between Plaintiff and Daniel Becker as the President of Becker Staffing. As discussed above, Plaintiff's Amended Complaint does not make it plausible that either of the moving Defendants is an officer or

19

director of Becker Staffing.  Further, Plaintiff's Amended

Complaint provides no reason to believe that a contract with

Becker Staffing would be binding on Joan or Harvey Becker.  Given

this fact, Plaintiff has not demonstrated that a contract exists

to which the moving Defendants are a party, and, therefore, he

has not stated a claim against these Defendants for breach of

contract.

**Count VII**

Finally, Plaintiff charges Defendants with conversion.  "The

classic definition of conversion under Pennsylvania law is 'the

deprivation of another's right of property in, or use or

possession of, a chattel, or other interference therewith,

without the owner's consent and without lawful justification.'"

Underhill Coal Mining Co. v. Hixon, 652 A.2d 343, 345 (Pa. Super.

Ct. 1994) (quoting Stevenson v. Econ. Bank of Ambridge, 197 A.2d

721, 726 (Pa. 1964)).  The focus in a conversion claim is on

whether the defendant exercised "dominion and control" over the

chattel that is inconsistent with the plaintiff's right.

Shonberger v. Oswell, 530 A.2d 112, 114 (Pa. Super. Ct. 1987).

An exercise of dominion and control can happen by acquiring

possession, transferring possession, withholding possession, or

damaging or misusing the chattel.  McMunn v. Upperman, 83 Pa. D.

& C.4th 103, 116 (Pa. C.P. Lawrence County 2006) (citing Martin

v. Nat'l Sur. Corp., 262 A.2d 672, 675 (Pa. 1970)).  Notably,

under the "participation theory," an agent or officer of a corporation can be held personally liable for conversion even if he or she only acted on behalf of the corporation and got no personal benefit.  <u>Shonberger</u>, 530 A.2d at 114.

Plaintiff's claim for conversion centers around his allegation that Defendants diverted funds from Becker Staffing's profit-sharing plan to their personal use.  Given that this claim overlaps substantially with his claim for breach of contract, we must first determine whether the "gist of the action" doctrine applies to bar Plaintiff's claim in tort.  The point of the gist of the action doctrine is to prevent a plaintiff from "recasting ordinary breach of contract claims into tort claims."  <u>Hart v. Arnold</u>, 884 A.2d 316, 339 (Pa. Super. Ct. 2005).  "[A] claim should be limited to a contract claim when the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts."  <u>Id.</u> at 339-40.  If the contract is collateral to the tort claim, however, it is appropriate for a plaintiff to pursue a tort claim even if a breach of contract was a step in providing an actionable tort.  <u>Id.</u> at 339.  In the present case, although Plaintiff's claim against the moving Defendants is similar to his breach of contract claim, these Defendants were not parties to the contract, and a breach of contract claim could not be maintained against them; even though a contract did exist, which

gave Plaintiff a right to the chattel, this contract was
collateral to his claims against the moving Defendants. Further,
the moving Defendants' relationship with Plaintiff was not
governed by the contract, but rather by broader social policies
about Plaintiff's right to his property and Defendants' alleged
taking of this property. To the extent that the moving
Defendants did participate in tortious conduct, therefore,
Plaintiff is not precluded from pursuing a tort claim for
conversion against them by the gist of the action doctrine.

Given that it is appropriate for Plaintiff to bring a tort
action against these Defendants for conversion, we must next
determine whether Plaintiff has adequately pled a cause of action
against these Defendants. In this case, the chattel at issue was
money that was taken from a profit-sharing fund and diverted to
Defendants' personal use.[5] Plaintiff has alleged that he had a
right to this money due to his contract with Becker Staffing,
that the moving Defendants interfered with this right by
acquiring and/or withholding the chattel for their own personal
gain, and that Defendants had no justification for doing so. In
order to state a claim for conversion, however, Plaintiff must
also show that there was an intent to exercise dominion and
control over the chattel that was inconsistent with Plaintiff's

---

[5]As a side note, it is appropriate for money to be the chattel that
forms the subject of a conversion claim in Pennsylvania. Shonberger, 530 A.2d
at 114.

right to the chattel.  <u>Shonberger</u>, 530 A.2d at 114.  Plaintiff,
therefore, must plead facts sufficient to make it plausible that
the moving Defendants were at least aware of both from where the
funds were coming and that Plaintiff had a property right in the
money; if Defendants were not aware that the money was anyone's
chattel other than their own, they could not have intended to
exercise dominion and control that was inconsistent with anyone
else's right.  Plaintiff has failed to plead such facts.  As
discussed above, there is no indication, other than Plaintiff's
conclusory statements, that either of the moving Defendants was
involved in the operations of Becker Staffing.  Although the
moving Defendants were aware that they were receiving funds from
Becker Staffing in the form of the payment of bills or insurance
premiums, there is no indication that either of these Defendants
knew from where the funds were coming or that either of these
Defendants had any reason to know that Plaintiff may have been
entitled to a portion of the funds due to his participation in
the company's profit-sharing plan.  Given that Plaintiff has not
pled facts that make the intent prong of a conversion cause of
action plausible, his claim for conversion against the moving
Defendants must also be dismissed.

## <u>Conclusion</u>

Defendants' Motion to Dismiss is granted on all counts.
Having determined that this Court lacks subject matter

jurisdiction over Count I of Plaintiff's Amended Complaint, it is dismissed as to all Defendants and not just those who filed the instant motion.  Counts II through VII, on the other hand, are dismissed as to Defendants Joan and Harvey Becker only, as Plaintiff has failed to state a claim on which relief can be granted against these Defendants.